IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NOVARTIS VACCINES AND DIAGNOSTICS, INC. and NOVO NORDISK A/S, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 2:08-CV-068 (TJW) |
| v. | § § | |
| BAYER HEALTHCARE LLC, BAYER AG, and CSL BEHRING LLC., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Bayer HealthCare LLC's ("Bayer") and CSL Behring LLC's ("CSL") (collectively "Defendants") Motion to Transfer Venue to the Northern District of California. [Dkt. No. 23] Defendants request that this case be transferred to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 20 and 21. After careful consideration of the parties' written submissions, Defendants' motion is DENIED for the reasons set forth in this opinion.

I.  **Background**

Plaintiffs Novartis Vaccines ("Novartis") and Novo Nordisk A/S ("Novo") bring this suit alleging that Defendants infringe U.S. Patent No. 7,138,505 ("the '505 patent"). Novartis is a Delaware corporation with its principal place of business in Emeryville, California. Novo is a Danish corporation with its corporate headquarters in Bagsværd, Denmark. Bayer is a Delaware limited liability company with its headquarters in Tarrytown, NY. Bayer manufactures the accused products in Berkeley, California. Defendant Bayer Healthcare AG is a German corporation with its principal place of business in Leverkusen, Germany. Defendant Bayer

Schering Pharma AG is a German corporation with its principal place of business in Berlin, Germany. CSL is a Delaware limited liability company, with its principal place of business in King of Prussia, Pennsylvania.

## II. Discussion

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The Federal Circuit applies regional circuit law to district court decisions related to venue. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying Fifth Circuit law to rulings on transfer motions out of this circuit). The Fifth Circuit has recently enunciated the standard that district courts in this circuit should apply when deciding motions to transfer venue. *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The Fifth Circuit ruled that "§ 1404(a) venue transfers may be granted upon a lesser showing of inconvenience than *forum non conveniens* dismissals," and that "the burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal." *Id*. at 314 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The Court held that the party seeking a transfer must show good cause why a court should not defer to the plaintiff's choice of forum. *Id.* at 315. Under the good cause standard, "when the transferee venue is not clearly more convenient, the plaintiff's choice should be respected." *Id*.

2

The Court reiterated that the relevant factors to be considered for a 1404(a) motion are the same as those in the *forum non conveniens* context, which include both public and private interest factors. *Id.* at 315 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.,* 321 F.2d 53, 56 (5th Cir. 1963)). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315. These factors are not necessarily exhaustive or exclusive, and none can be said to be of dispositive weight. *Id.* (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

A. **Private Interest Factors**

1. Convenience of the Parties and Witnesses and Cost of Attendance for Witnesses

The Court first considers the convenience of the witnesses and parties. In *Volkswagen I*, the Fifth Circuit established the "100-mile" rule, which states that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witness increases in direct relationship to the additional distance to be traveled." 371 F.3d at 204-5. When applying the 100-mile rule, a court should not place too much weight to the relative inconvenience for overseas parties and witnesses. *See In re Genentech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (finding that "witnesses from Europe will

be required to travel a significant distance no matter where they testify"). Furthermore, in cases where potential witnesses are from widely scattered locations, a trial court should not consider its "central location . . . in the absence of witnesses within the plaintiff's choice of venue." *Id.* The court "should assess the relevance and materiality of the information the witness may provide," not the "significance of the identified witnesses' testimony." *Id.* at 1343-44.

Novartis' location in Emeryville, California, is within 100-miles of the Northern District of California. Novo is in Denmark. Plaintiffs represented to the Court that this is a convenient forum when they elected to bring suit here.

Bayer's principal place of business in Tarrytown, New York is 1,340 miles closer to Marshall than to San Francisco.[1] Bayer's office in Berkeley, California, is within 100 miles of the Northern District of California. Bayer Healtcare AG[2] and Bayer Schering Pharma AG[3] are located in Germany, and CSL is located in Pennsylvania,[4] all of which are closer to the Eastern District of Texas. With the exception of Bayer's manufacturing facility in Berkeley, each of the defendants is closer to the Eastern District of Texas than the Northern District of California.

---

[1] The closest international airport for Bayer Healthcare is New York's JFK. There are 1240 air miles between JFK and Shreveport, LA (the closest major airport to Marshall, TX, with service by Delta, Continental, American and Northwest Airlines). There are 2580 air miles between JFK and San Francisco.

[2] The closest international airport for Bayer Healthcare AG is Dusseldorf, DE. There are 4920 air miles between Dusseldorf and Shreveport. There are 5560 air miles between Dusseldorf and San Francisco. Bayer Healthcare AG is 640 miles closer to Marshall than to San Francisco.

[3] The closest international airport for Bayer Schering Pharma AG is Berlin-Brandeburg. There are 5120 air miles between Berlin-Brandegerg and Shreveport. There are 5660 air miles between Berlin-Brandeburg and San Francisco. BayerSchering Pharma AG is 540 miles closer to Marshall than San Francisco.

[4] The closest international airport for CSL is Philadelphia's PHL. There are 1150 air miles between PHL and Shreveport. There are 2510 air miles between PHL and San Francisco. CSL is 1360 miles closer to Marshall than San Francisco.

Bayer urges the Court to consider travel time, as well as travel distance. Considering travel time does not change the Court's conclusion. Bayer and CSL would travel a shorter amount of time by plane to come to the Eastern District of Texas.[5] Bayer Healthcare AG and Bayer Schering Pharma AG's flights from Germany would take an insignificantly longer amount of time, including stopovers, to arrive in Shreveport. However, per the Federal Circuit's guidance in *In re Genentech*, the Court does not place very much emphasis on this additional travel time for the defendants arriving from Germany. Therefore, the Court finds that Defendants have not shown that the Northern District of California is clearly more convenient to the parties than the Eastern District of Texas.

With respect to the witnesses, both party and non-party witnesses in this case are spread throughout the United States and Europe. Defendants have identified forty-one potential witnesses [Dkt. No. 64, Ex. 3], of which sixteen are in Northern California. Novartis has identified twenty-nine potential witnesses, of which ten are in located in Northern California.[6] Under the composition of potential witnesses proposed by either party, about forty percent of the potential witnesses are located in the Northern District of California. None of the witnesses are located in the Eastern District of Texas. Plaintiffs urge the Court to minimize the weight of the number of witnesses in California as cumulative because many of them would provide duplicative testimony. In light of the Federal Circuit's ruling in *In re Genentech*, the Court declines to undertake such an analysis. *See In re Genentech* at 1343-44 (disallowing consideration of the significance of witness' testimony). Plaintiffs also urge the Court to find

---

[5] A review of available flights for March 27, 2009 shows that the shortest flight from JFK to Shreveport is 5 hours and 32 minutes, while the shortest flight from JFK to San Francisco is 6 hours and 25 minutes. The shortest flight from Philadelphia to Shreveport is 4 hours and 58 minutes, while the shortest flight from Philadelphia to San Francisco is 6 hours and 17 minutes. All of these times include any connection times.

[6] There is slight discrepancy about the additional twelve witnesses, of which six are from California.

that the Eastern District of Texas is a central location. Neither party has identified any witnesses within the Eastern District of Texas. Therefore, the centrality of the Court's location is irrelevant to the analysis in this case, in light of *In re Genentech*. *See id.* at 1344. Based upon the fact that a substantial number of witnesses are in the Northern District of California, the Court finds that this factor weighs in favor of transfer.

2. <u>The Availability and Location of Sources of Proof</u>

"That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. Even in the age of electronic discovery, considerations of physical evidence remain meaningful in a § 1404(a) analysis. *See id.* "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 330 (E.D.N.Y 2006).

Defendants contend that several sources of documentary proof and other evidence are located in the Northern District of California. Specifically, Defendants argue that much of the prior art documentation from Genentech and Novartis' research are located in the Northern District of California. The Court agrees that likely relevant evidence will be found in the San Francisco Bay Area. However, likely relevant evidence will also be located around the world, including Bagsværd, Denmark; King of Prussia, Pennsylvania; Tarrytown, New York; Leverkusen, Germany; and Berlin, Germany.

Defendants have not shown that there will be any significant inconvenience if they are required to transport documents to Marshall, Texas. Indeed, many of the documents are likely

6

located at the Bayer's headquarters in New York, which is closer to this court than the Northern District of California. *Id.* Defendants have not identified any documents or evidence located in the Northern District of California that can not be produced electronically, and have not otherwise shown that transporting documents and physical evidence to Marshall would pose significant additional inconvenience.[7] Therefore, the Court finds that this factor weighs against transfer.

3. <u>The Availability of Compulsory Process to Secure the Attendance of Witnesses</u>

Federal Rule of Civil Procedure 45(b)(2) allows a federal district court to compel a witness' attendance at a trial or hearing by subpoena. However, a court's subpoena power is subject to Rule 45(c)(3)(A)(ii), which protects nonparty witnesses who work or reside more than 100 miles from the courthouse. *See Volkswagen II*, 545 F.3d at 316.

With respect to this factor, the facts of this case are very similar to *In re Genentech*. "[T]here is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas. The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly." *In re Genentech*, 566 F.3d at 1345.

4. <u>The Possibility of Delay and Prejudice if Transfer is Granted</u>

The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis "only in rare and special circumstances and when such circumstances are established by clear and convincing evidence." *Shoemake v. Union Pacific R.R. Co.*, 233 F.Supp.2d 828, 834 (citing

---

[7] The *TS Tech* court emphasized the physical nature of the evidence at issue and that such evidence, including actual physical objects, would be more easily transported to Ohio. *Odom v. Microsoft Corp*, 596 F. Supp. 2d 995, 1000 (E.D. Tex. Jan. 30 2009) (citing *In re TS Tech*, 551 F.3d at 1321).

*In re Horseshoe Entm't*, 305 F.3d 354, 358 (5th Cir. 2002)). This is not a rare and exceptional case; therefore, this factor is neutral.

### C. Public Interest Factors

#### 1. The Administrative Difficulties Caused by Court Congestion

Defendants have presented statistics for 2007 regarding the number of patent cases per judge in the Northern District of California and the Eastern District of Texas. Defendants have failed to show that these bare statistics translate into more administrative difficulties or a slower disposition of cases in the Eastern District. This factor is neutral as to transfer.

#### 2. The Local Interest in Adjudicating Local Disputes and the Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

Transfer may be appropriate where none of the operative facts occurred in the division and where the division has no particular local interest in the outcome of the case. *See In re Volkswagen*, 545 F.3d at 318. Defendants argue that the sale of allegedly infringing products throughout the Eastern District of Texas is not a sufficiently local interest to tilt this factor against a transfer. The Court agrees. *See Volkswagen II*, 545 F.3d at 318 (finding no local interest based on the local availability of a product subject to a product liability claim, as such rationale could apply to virtually any judicial district in the U.S. and would leave no room for consideration of those actually affected by the controversies and events giving rise to the case); *accord In re TS Tech*, 551 F.3d at 1321. However, the fact that this District has no more of an interest in the dispute than any other district where the allegedly infringing activities are occurring does not necessitate transfer. *See In re Telular Corporation*, 319 Fed. Appx. 909, 912

(Fed. Cir. 2009). In this case, the allegedly infringing product is manufactured in the Northern District of California, which makes this factor weigh in favor of transfer.

     3.        <u>The Familiarity of the Forum with the Law that will Govern the Case</u>

Patent claims are governed by federal law. This Court and the Northern District of California are both capable of applying patent law to infringement claims. This factor is neutral as to transfer.

     4.        <u>The avoidance of Unnecessary Problems in Conflict of Laws</u>

The Court finds that this factor is inapplicable in this transfer analysis.

     5.        <u>Judicial Economy</u>

Section 1404(a) requires that a Court ruling on a motion to transfer also take into account "the interest of justice." 28 U.S.C. § 1404(a) (1994); *Volkswagen II*, 545 F.3d at 315 ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"). The Federal Circuit has found that, in patent cases, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citations omitted). "[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Plaintiffs have pending in this courthouse a related lawsuit against Wyeth asserting the '505 patent, which is the same patent that is at issue in this case. *See Novartis Vaccines & Diagnostics, Inc. v. Wyeth*, Civil Action No. 2:08-cv-067. The

two cases involve the same claim construction issues and transferring the case will only consume unnecessarily additional judicial resources. The court finds that the interests of justice weigh heavily against transfer.

### III. Conclusion

For the reasons stated above, Defendants have failed to satisfy their burden of showing good cause that a transfer is clearly more convenient in this case. The Court finds that the competing factors do not justify a transfer. Accordingly, Defendants' Motion is DENIED.

SIGNED this 28th day of September, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE